**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| RUNGRUDEE SUTEERACHANON | * | |
|     Plaintiff, | | |
| v. | * | CIVIL ACTION NO. RWT-13-2889 |
| MCDONALD'S RESTAURANTS OF MARYLAND, INC. | * | |
|     Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| RUNGRUDEE SUTEERACHANON | * | |
|     Plaintiff, | | |
| v. | * | CIVIL ACTION NO. RWT-13-2890 |
| MCDONALD'S RESTAURANTS OF MARYLAND, INC. | * | |
|     Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| RUNGRUDEE SUTEERACHANON | * | |
|     Plaintiff, | | |
| v. | * | CIVIL ACTION NO. RWT-13-3150 |
| MCDONALD'S RESTAURANTS OF MARYLAND, INC. | * | |
|     Defendant. | * | |

\*\*\*\*\*

**MEMORANDUM OPINION**

Pending before the Court are cross-motions for summary judgment in the above-captioned lawsuits.[1]  Also pending are Plaintiff's requests to rewrite her motions. For the reasons below, Defendant's motions for summary judgment will be granted, and Plaintiff will not be granted leave to rewrite her motions.

---

[1] Each of the lawsuits is by Rungrudee Suteerachanon against McDonald's Restaurants of Maryland, Inc., and each arises from Suteerachanon's employment at McDonald's. However, because the underlying facts in each Complaint are different, the Court did not consolidate the cases. Case No. 13-2889, Doc. No. 29.

**BACKGROUND**

Plaintiff has worked for McDonald's Restaurants of Maryland, Inc. ("McDonald's") since 2004. Case No. 13-2889, Doc. No. 55 at 3. She first worked at McDonald's Quince Orchard location, later transferring to the Rockville Pike location, where she was promoted to Floor Supervisor. *Id.* After experiencing conflict with her supervisors at the Rockville Pike location, Plaintiff requested a transfer to the Urbana location, which McDonald's granted. *Id.* 4-6. At the Urbana McDonald's, Plaintiff continued to have conflicts with her supervisors. *Id.* at 7. As of August 2014, Plaintiff still worked for McDonald's. *Id.* at 8.

In her lawsuits, Plaintiff challenges a number of employment actions taken by McDonald's against her, allegedly on the basis of race, national origin, and religion, and as retaliation for engaging in protected activity.

### I. Case No. 13-2889

In this case, Plaintiff challenges the following employment actions: (1) being written up in May 2012; (2) being taken off the work schedule for the month of June; (3) being told she could only work in June if she worked the overnight shift; (4) being "forced" to transfer to the Urbana location; and (5) not being given management responsibilities after her transfer to the Urbana location. Case No. 13-2889, Doc. No. 3.

### II. Case No. 13-2890

In this case, Plaintiff challenges: (1) McDonald's failure, on two occasions, to give her a biannual raise, and to give her vacation pay; (2) disciplinary actions taken against her in December and May 2011, including a suspension; and (3) unequal pay and work responsibilities. Case No. 13-2890, Doc. No. 3.

**III.    Case No. 13-3150**

In this case, Plaintiff challenges: (1) McDonald's failure to train and promote her; and (2) a negative evaluation she received.  Case No. 13-3150, Doc. No. 1.

## STANDARD OF REVIEW

**I.    Summary Judgment**

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006).  A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49.  However, the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24).  When ruling on a motion for summary

judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (emphasis added). However, "if the evidence is merely colorable or not significantly probative, it may not be adequate to oppose entry of summary judgment." *Thompson Everett, Inc. v. Nat'l Cable Adv.*, 57 F.3d 1312, 1323 (4th Cir. 1995).

## II.     Application of the McDonnell Douglas Standard

A review of the facts and allegations in this case shows that Plaintiff has not put forth any direct evidence of discrimination. Accordingly, in evaluating the law and material facts on the record, this Court will apply the *McDonnell Douglas* burden shifting standard. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established a burden-shifting framework for evaluating claims of employment discrimination and retaliation under Title VII.[2] Under this framework, Plaintiff has the initial burden of establishing a *prima facie* case by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802. If Plaintiff establishes a *prima facie* case, the burden of production shifts to McDonald's to articulate legitimate, nondiscriminatory reasons for its actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Plaintiff must then prove by a preponderance of evidence that the legitimate reasons offered by her employer are but a pretext for discrimination, thus creating an inference that McDonald's acted with discriminatory intent. *Id.* at 143. If Plaintiff cannot produce evidence demonstrating the falsity of her employer's proffered reasons, McDonald's is entitled to summary judgment as a matter of law. *Id.* at 148.

In order to establish a *prima facie* case of employment discrimination under the *McDonnell Douglas* framework, Plaintiff must show that she is a member of a protected class,

---

[2] Claims of retaliation also can be analyzed using the *McDonnell Douglas* burden shifting framework of Title VII. *See Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253, 258 (4th Cir. 1998).

4

that her job performance was satisfactory, that she was subject to an adverse employment action, and that similarly-situated employees outside of her protected class received more favorable treatment. *E.g.*, *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). In order to establish a *prima facie* case of retaliation, Plaintiff must show that she engaged in protected activity, that she suffered an adverse employment action, and that the adverse employment action was taken because of her protected activity. *E.g., Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001).

## ANALYSIS

### I. Case No. 13-2889

In Case No. 13-2889, Plaintiff complains that she received a written warning following her refusal to follow a "wrong order" of her supervisor, that she was taken off the work schedule for the month of June unless she agreed to work the overnight shift, that she was therefore forced to transfer to another store where she could work the day shift, and that she has not been given management duties. Case No. 13-2889, Doc. No. 3.

**A. Written Warning and Lack of Management Duties**

Assuming, without deciding, that Plaintiff has established a *prima facie* case of discrimination based on receiving a written warning and not being given management duties, McDonald's has proffered a legitimate, non-discriminatory reason for these actions: that Plaintiff has been repeatedly insubordinate. Plaintiff admits that on multiple occasions she refused to follow the orders of her supervisors. Case No. 13-2889, Doc. No. 55-1 at 17-18. Because McDonald's has produced evidence showing a legitimate, non-discriminatory reason for its actions, Plaintiff must show that this reason is pretext for discrimination. *Reeves*, 530 U.S. at 143. Plaintiff has failed to produce any evidence whatsoever of pretext. For example, there is

no evidence to suggest that other employees outside of Plaintiff's protected class who refused to follow orders were not given written warnings, or were given management duties, or that Plaintiff received orders that were different from others outside of her protected class. Without any evidence of pretext, no reasonable jury could find that Plaintiff has met her burden under *McDonnell Douglas*, and her claim fails as a matter of law. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 319-20 (4th Cir. 2005) (affirming grant of summary judgment where the plaintiff was unable to produce evidence showing that nondiscriminatory reasons for adverse employment action were pretextual).

### B. Forcing Plaintiff to Work the Overnight Shift

Plaintiff complains that she was left off the work schedule after June 6, 2012. Case No. 13-2889, Doc. No. 58 at 4. When she inquired, she was told that she could not work the day shift because no one wanted to work with her, but she could get on the schedule if she agreed to work the overnight shift, where she would be able to work alone. *Id.* Because she did not want to work nights, Plaintiff claims she was "forced" to voluntarily request a transfer from Rockville Pike to the Urbana location, which was further away from her home. *Id.* at 5. Assuming, without deciding, that Plaintiff has made out a *prima facie* case of discrimination based on this action, McDonald's proffered reason, that no one would work with Plaintiff on the day shift, is legitimate and non-discriminatory. There is ample evidence in the record to suggest that Plaintiff was difficult to work with. By her own admission she was insubordinate on multiple occasions, and her frequent refusal to follow orders necessitated her being sent home. Case No. 13-2889, Doc. No. 55-1 at 17-18. The written warning accompanying one of these incidents explains that Plaintiff needed "to become more of a team player." *Id.* at 47.

Again, Plaintiff fails to come forward with any evidence to suggest that McDonald's proferred reason was pretextual. For example, there is no affidavit from any McDonald's employee that was willing to work with Plaintiff at the Rockville Pike location, or any evidence that other employees who were similarly difficult to work with, or had disciplinary histories similar to Plaintiff's, were allowed to work the day shift. Since Plaintiff has produced no evidence of pretext, no reasonable jury could find that McDonald's reason was pretext, and her claim fails. *Diamond*, 416 F.3d at 319-20.

**II.     Case No. 13-2890**

Plaintiff complains that McDonald's failed to give her vacation pay, failed on two occasions to give her a biannual raise, and "subjected [her] to work harder than other employees," while paying her less. Plaintiff also complains about written warnings she received.

**A. Claims that Plaintiff Received Unequal Benefits**

As to McDonald's failure to give Plaintiff her vacation pay and biannual raises, Plaintiff cannot establish a *prima facie* case of discrimination because she cannot show an adverse employment action. Specifically, while McDonald's does not dispute that it did not initially give Plaintiff her vacation pay and biannual raises, this was due to an administrative oversight that was later resolved, with Plaintiff receiving all the money McDonald's owed her. Case No. 13-2890, Doc. No. 42-1 at 21, 30. Courts have held, in the promotion context, that a mere delay in promotion does not constitute an adverse employment action if the employer gives the employee retroactive pay. *Mylett v. City of Corpus Christi*, 97 Fed. App'x. 473, 475 (5th Cir 2004). Similar reasoning applies here. Plaintiff actually received what she claims she was deprived of due to discrimination. A mere delay in receiving her benefits does not constitute

an adverse employment action, and therefore Plaintiff has not made out a *prima facie* case of discrimination.

### B. Claims that Plaintiff Works Harder and Was Paid Less than Other Employees

Plaintiff's claim that she works harder than other employees fails because she has not produced evidence showing this is an adverse employment action taken against her by McDonald's. This claim is apparently based on the fact that, as a night shift manager, she claims to have had less crewmembers than other night shift managers, and that she did her work better than other night shift managers. Case No. 13-2890, Doc. No. 42-1 at 24, 28-29. As to the number of crewmembers Plaintiff was given, she admitted in her deposition that she did not think that her supervisors actually made a decision to assign fewer crewmembers to her shift, but that other night managers got more crewmembers because they *specifically requested* more crewmembers. *Id.* at 25.

Plaintiff also admits that other night shift managers were required to complete the same tasks as her. *Id.* at 28-29. Her only complaint is, apparently, that she completed the required tasks better. *Id.* at 29. There is no evidence that her work was evaluated differently, or that McDonald's required more effort from her than other similarly situated employees. In other words, there is no evidence that McDonald's actually required Plaintiff to work harder than similarly situated employees, only that she, subjectively, feels that she worked harder. Finally, Plaintiff has failed to produce any evidence that similarly situated employees are paid more than she is. In fact, the only comparators Plaintiff provides have different positions than Plaintiff, and thus are not similarly situated.[3]

---

[3] Plaintiff asserts that some of the comparators have fewer responsibilities, but provides no evidence (such as job descriptions) that would corroborate this assertion.

### C. Written Warnings

Plaintiff's challenge to the disciplinary actions she received in October and December of 2011 fail for the same reason that similar claims fail in Case No. 13-2889. Even assuming Plaintiff can make out a *prima facie* case of discriminatory discipline, her insubordination constitutes a legitimate, nondiscriminatory reason for the discipline. Plaintiff admits that the discipline was the result of her refusal to follow orders. *Id.* at 42. Plaintiff has failed to produce any evidence showing this reason was pretext for discrimination, so her claim fails.

### III.   Case No. 13-3150

Plaintiff complains of a failure to promote and of an "unjustified negative evaluation when Plaintiff did not report false results to the corporation, that go against the Plaintiff's religious believe [sic], and increased surveillance on almost every step of Plaintiff working."

### A. Failure to Promote

Plaintiff complains that other employees were promoted ahead of her. Assuming, without deciding, that Plaintiff makes out a *prima facie* case of discrimination based on a failure to promote, McDonald's has proffered legitimate, nondiscriminatory reasons that Plaintiff has failed to counter. Specifically, McDonald's contends that other employees were promoted ahead of Plaintiff because those employees were better qualified and performed at a higher level than her. Case No. 3150, Doc. No. 35-1 at 61. Plaintiff responds, conclusory, that "[j]obs performance, work ethic, all personalities, and characteristics" of the employees promoted ahead of her "are not better than those of Plaintiff." Case No. 13-3150, Doc. No. 38 at 4. Yet again, however, she provides no evidence whatsoever to support her conclusions. For example, she does not produce her employee evaluations or the evaluations of employees who were promoted ahead of her. There is no evidence of her qualifications as compared to those employees who

were actually promoted. Thus, she fails, again, to show that McDonald's proffered reasons are pretexts for discrimination, and her claim fails.

### B.  Unjustified Negative Evaluations

Apparently, the "negative evaluation" Plaintiff received was, in fact, the failure of her supervisors to give her daily compliments for her good work. Case No. 3150, Doc. No. 35-1 at 40. This claim fails because it does not constitute an "adverse employment action." An "adverse employment action" is conduct that materially alters the terms, conditions, or benefits of employment. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). A failure to give daily compliments has no material affect on the terms, conditions, or benefits of employment. At most, this is a "petty slight" or "minor annoyance" that cannot possibly form the basis of an employment discrimination claim. *Cf. Burlington N. & Sante Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (in retaliation context, holding that petty slights and minor annoyances are not materially adverse employment actions).

### C.  Increased Surveillance

Although Plaintiff complains of being subject to increased surveillance, she has produced no evidence to support this claim aside from her own conclusory assertions that her "manager watch[es her] on every step." Case No. 3150, Doc. No. 35-1 at 43. Because she has no evidence to support this claim, it fails.

## IV.  Retaliation Claims

To the extent any of the actions Plaintiff challenges as discriminatory are also challenged as being retaliation for engaging in protected activity, these claims fail for the same reasons that her discrimination claims fail. Either Plaintiff cannot show that she suffered a materially adverse

action,[4] or she does not provide any evidence that McDonald's proffered nonretaliatory reasons are pretextual.

V.     **Motions to Amend and Rewrite**

After Defendant filed its responses to Plaintiff's cross-motions for summary judgment, Plaintiff filed a motion seeking to re-write or amend her motion. *E.g.*, Case No. 13-2889, Doc. No. 60. Plaintiff asserts she is entitled to rewrite her motions at this late date because "there are some allegation was missing from Defendant's Motion for Summary Judgment. Also there are many dispute [sic] facts that Plaintiff had to oppose. As a result, Plaintiff took longer time than Plaintiff thought." Case No. 13-2889, Doc. No. 67 at 2. Defendant moved to strike each of Plaintiff's attempts to rewrite her motions. Case No. 13-2889, Doc. No. 62.

According to Federal Rule of Civil Procedure 6(b)(1)(B), the Court may extend the time for a party to file a motion if the party failed to act because of "excusable neglect." To determine whether Plaintiff's neglect is excusable, the Court considers: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its impact on the proceedings; (3) the reason for the delay, particularly whether the reason was within the movant's control; and (4) whether the movant acted in good faith. *Fernandes v. Craine*, 538 Fed. App'x 274, 276 (4th Cir. 2013). Each factor favors denying Plaintiff's requests.

There is a clearly significant danger of prejudice to McDonald's. McDonald's is defending three separate lawsuits that, although they all arise out of Plaintiff's employment, all allege different facts and, thus, require McDonald's to make different arguments. McDonald's had to file three separate responses to Plaintiff's motions. It would be unfair to McDonald's to

---

[4] To be a materially adverse employment action, Plaintiff must show the action would have dissuaded a reasonable employee from making a charge of discrimination. *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Court notes that none of the employment actions Plaintiff challenges has actually dissuaded her from pursuing any of the three separate lawsuits she is now prosecuting, or the related EEOC charges.

11

force it to expend still more time and money to draft new responses to new arguments after having already spent significant time responding to Plaintiff's original arguments.

As to the impact on the proceedings, allowing Plaintiff to amend her motions at this late stage would cause unnecessary delay.  Each party's potentially dispositive motions are now ripe for decision.  If Plaintiff is permitted to submit new motions, McDonald's will have to file new responses, and Plaintiff could file new replies.  The Court would then have to consider the arguments anew in reaching a decision.  This would cause significant and unacceptable delay.

As to the reason for the delay, Plaintiff's reasons are unavailing.  She is very much aware of the facts underlying her claims.  She had ample opportunity to read and digest McDonald's motions prior to filing her own motions.  If she felt McDonald's made unanticipated arguments, or misrepresented her claims, in a way that would make writing her motions more difficult than she expected, she could and should have requested an extension of time much sooner, and certainly before the deadline set by this Court.

Finally, Plaintiff has not acted in good faith.  She waited until *after* McDonald's had filed responses to her original motions before seeking to rewrite or amend those motions.  Plaintiff had ample time *before* filing her original motions to seek an extension of time if she felt she could not make her arguments within the time allotted.  Or, she could have sought an extension shortly after filing her original motions, before McDonald's expended significant time and effort drafting its responses.  Instead, she waited until after McDonald's had already filed its responses.  This conduct demonstrates a total lack of respect for the time and resources of her opponent.

The Court is well aware that *pro se* litigants are to be granted a certain degree of leniency.  This leniency, however, is not a license to litigate unreasonably and to waste the time and resources of the Court and opponents.  Plaintiff had plenty of time to marshal the facts she

needed to support her claims and to draft motions showing her entitlement to relief.  If she felt the original schedule she agreed to had become unreasonable, she had a duty to promptly seek an extension.  Her failure to act reasonably will not be rewarded.  Accordingly, Plaintiff will not be allowed to rewrite any of her motions, and any rewritten motions she has submitted will be stricken.[5]

## CONCLUSION

Plaintiff has failed to produce any evidence which would allow a reasonable jury to find in her favor.  Accordingly, the Court will grant the Defendant's Motion for Summary Judgment in each of the three actions.  Further, Plaintiff will not be allowed to re-write or amend her motions.  A separate order follows.


November 24, 2014                                        /s/
                                                    Roger W. Titus
                                                    United States District Judge

---

[5] The Court has reviewed the Plaintiff's rewritten motions, and even if they had been allowed, she has failed to generate any genuine issues of material fact.  In short, all of the actions taken by McDonald's were supported by legitimate business reasons and the Plaintiff, in both her original and proposed rewritten motions has failed to demonstrate that the reasons were pretextual.